IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MONTRELLE DANIEL DOUGLAS          :
                                  :          CIVIL ACTION
            v                     :
                                  :          NO. 10-5574
JANE DOE, ET AL.                  :

SURRICK, J.                                      SEPTEMBER  12 , 2014

**MEMORANDUM**

Presently before the Court is Defendant Joseph Korszniak's[1] Motion to Dismiss (ECF

No. 30), and Defendants Pennsylvania State Department of Corrections, John Wetzel, and

William Lewis's Motion to Dismiss (ECF No. 31).  For the following reasons, Defendants'

Motions will be granted in part and denied in part.

**I.      BACKGROUND**

**A.      Procedural History**

On October 24, 2010, Plaintiff acting *pro se* filed a Complaint.  (ECF No. 3.)  That same

day, we ordered that Plaintiff be appointed counsel.  (ECF No. 5.)  On February 14, 2012,

counsel was appointed.  (ECF No. 21.)  On April 30, 2012, counsel for Plaintiff filed an

Amended Complaint.  (Am. Compl., ECF No. 29.)  The Amended Complaint asserts five claims:

violations of 42 U.S.C. § 1983 (Counts I & II), violation of the Americans with Disabilities Act

("ADA"), 42 U.S.C. §§ 12101, *et seq.* (Count III), and violations of Pennsylvania law for

intentional infliction of emotional distress (Count IV) and negligent infliction of emotional

distress (Count V).  On June 15, 2012, Defendant Joseph Korszniak filed a Motion to Dismiss

---

[1] Plaintiff misidentified Defendant Joseph Korszniak as Dr. Korsiack.  In fact, Korszniak
is a physician's assistant.  We will use the corrected designation and spelling.

the Amended Complaint.  (Korszniak Mot., ECF No. 30.)  Also on June 15, 2012, Defendants

the Pennsylvania State Department of Corrections ("DOC"), John Wetzel, and Sergeant William

Lewis (collectively the "Commonwealth Defendants") filed a Motion to Dismiss.  (Comm.

Defs.' Mot., ECF No. 31.)  On August 1, 2012, Plaintiff filed a Response in opposition to the

Motions.  (Pl.'s Resp., ECF No. 35.)

**B.      Factual History[2]**

The Amended Complaint alleges that on December 7, 2008, Plaintiff was committed to

the Pennsylvania State Correctional Institution at Graterford ("Graterford") while he was

awaiting a hearing on state criminal charges.  (Am. Compl. ¶ 18.)  Prior to being committed,

Plaintiff had undergone ankle and leg surgery.  The surgery resulted in a six-inch metal plate and

a number of surgical screws being inserted into Plaintiff's leg.  (*Id.* at ¶ 19.)  As a result of the

surgery, Plaintiff was unable to bear weight on or fully utilize his left foot, ankle, and leg.  (*Id.*)

Specifically, Plaintiff could not climb or use stairs.  (*Id.*)  Plaintiff informed Korszniak and

Lewis of his limited ability to use his left foot, ankle, and leg.  (*Id.* at ¶ 20.)  In addition,

Plaintiff's injuries were immediately obvious and apparent.  (*Id.*)  Because of his leg injury,

Plaintiff requested assignment to a sleeping facility that would not require him to use any ladder

or other device that was beyond his capabilities.  (*Id.* at ¶ 21.)  Plaintiff was assigned to an upper

bunk in E-B Block, cell 243-2.  (*Id.* at ¶ 22.)

After his assignment, Plaintiff informed Korszniak and Lewis that he could not ascend or

descend from an upper bunk without assistance.  (*Id.* at ¶ 23.)  No means of assistance were

---

[2] In considering Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."  *DelRio-Mocci v. Connolly Props., Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (quoting *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)).  We rely on the operative facts as presented in Plaintiff's Amended Complaint.

provided.  (*Id.* at ¶ 24.)  On December 8, 2008, Plaintiff again advised Korszniak and Lewis that

he was unable to use an upper bunk without there being a serious threat that he would fall.  (*Id.* at

¶ 24.)  Plaintiff asked for a safety guard or other device that would allow him to get in and out of

his assigned bunk without a risk of falling.  (*Id.* at ¶¶ 24-25.)  None was provided.  (*Id.*)  On

December 9, 2008, Plaintiff was struggling to descend from his assigned bunk when he lost his

balance and fell to the floor of his cell.  (*Id.* at ¶ 26.)

       As a result of his fall, Plaintiff suffered severe strain to his back, left leg, foot, and ankle,

and a herniation of a disc in his lower spine.  (*Id.* at ¶ 27.)  When Plaintiff complained of these

injuries, he was accused of malingering and he did not receive further medical care.  (*Id.* at ¶ 28.)

These injuries have severely impacted his mobility and continue to cause him severe pain.  (*Id.*)

The pain has permanently affected the use of his back and left leg and made performance of

everyday functions difficult and painful.  (*Id.*)

       On December 29, 2008, when Plaintiff was returned to his cell in a wheelchair, he was

accused of malingering, assaulted by prison staff, and threatened to be placed in the Special

Housing Unit.  (*Id.* at ¶ 29.)  Plaintiff alleges that he sought to file administrative complaints but

was advised by Defendants that a complaint had already been filed or that administrative

remedies were not available to him as a temporary detainee.  (*Id.* at ¶¶ 31, 37.)  Plaintiff claims

to have suffered emotional trauma from these events.  (*Id.* at ¶¶ 68, 71.)

## II.   LEGAL STANDARD

       Under Federal Rule of Civil Procedure 8(a)(2), "a pleading that states a claim for relief

must contain a short and plain statement of the claim showing that the pleader is entitled to

relief."  Failure to state a claim upon which relief can be granted is basis for dismissal of the

complaint.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A complaint that merely alleges entitlement to relief, without alleging facts that

show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d

Cir. 2009).  This "'does not impose a probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal

evidence of' the necessary element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir.

2008) (quoting *Twombly*, 550 U.S. at 556).  "A complaint may not be dismissed because it

appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."

*McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009).

      In determining whether dismissal is appropriate, courts use a two-part analysis.  *Fowler*,

578 F.3d at 210.  First, courts separate the factual and legal elements of the claim and accept all

of the complaint's well-pleaded facts as true.  *Id.* at 210-11.  Next, courts determine whether the

facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for

relief."  *Id.* at 211.  Given the nature of the two-part analysis, "'[d]etermining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.'"  *See McTernan v. City of

York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. 663-64).

III.    **DISCUSSION**

A.      **Claim Against the Commonwealth Defendants in Their Official Capacities**

Plaintiff brings claims against the DOC, Wetzel, Lewis, and "various unknown agents and employees." (Am. Compl.)[3]  The Eleventh Amendment bars "suits against unconsenting [s]tates" unless a state has waived its immunity. *Sossamon v. Texas*, -- U.S. --, 131 S. Ct. 1651, 1657-58 (2011).  "Where a state agency or department is named as defendant, that too is considered a suit against a state which is barred by the eleventh amendment." *Geis v. Bd. of Ed.*, 774 F.2d 575, 580 (3d Cir. 1985).  The claims brought here against the DOC and the DOC employees in their official capacity are suits against the state of Pennsylvania. *See Randolph v. Wetzel*, 987 F. Supp. 2d 605, 613 (E.D. Pa. 2013).  Therefore, to the extent Plaintiff is bringing suit against them in their official capacity for monetary damages, those claims are barred.  We must nevertheless analyze whether Plaintiff states valid claims against Wetzel and Lewis in their individual capacities because the Eleventh Amendment does not bar damages suits against state officials in their individual capacities. *West v. Keve*, 571 F.2d 158, 163 (3d Cir. 1978).

B.      **Count I**

Count I states claims against Wetzel, Korszniak, and Lewis under 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff claims that Wetzel, Korszniak, and Lewis violated his right to be free from cruel and unusual punishment.  Defendants make a number of arguments as to why Plaintiff's claim fails.

*1.      Exhaustion of Administrative Remedies*

---

[3] In the Amended Complaint, Plaintiff incorrectly identifies Korszniak as an employee of the DOC.  In reality, he is an employee of Prison Health Services.  (Comm. Mot. 1.)

Defendants argue that Plaintiff's claim must fail because he did not exhaust his administrative remedies. The Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). To properly exhaust administrative remedies means that a prisoner must comply with prison grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant. In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (internal citations omitted). Defendants raise this affirmative defense in their Motions.

Plaintiff does not claim that he properly exhausted his administrative remedies by complying with the DOC's inmate grievance system. Rather, Plaintiff claims that administrative remedies were not available to him. Specifically, Plaintiff alleges that he sought to pursue administrative remedies but that Defendants advised him that grievances had either already been filed or were unavailable to him. (Am. Compl. ¶¶ 31, 37.) Third Circuit case law provides that "dismissal or summary judgment for failure to exhaust under § 1997e(a) is inappropriate when prison officials have misled or otherwise precluded the inmate from filing or exhausting prison grievance procedures." *Rodriguez Ramos v. Smith*, No. 04-249, 2005 WL 3054291, at *5 (E.D. Pa. Nov. 14, 2005) (citing *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003), *Brown*, 312 F.3d at 112, *Camp v. Brennan*, 219 F.3d 279, 280-81 (3d Cir. 2000) & *Oliver v. Moore*, No. 04-1540, 2005 WL 1988996, at *3-4 (3d Cir. Aug. 18, 2005)). This is because a prisoner need only exhaust administrative remedies "available" to him, and "a grievance procedure is not available

6

. . . if the defendant prison officials somehow prevent a prisoner from using it." *Rye v. Erie Cnty. Prison*, 689 F. Supp. 2d 770, 779 (W.D. Pa. 2009) (quoting *Mitchell*, 318 F.3d at 529). Accepting Plaintiff's allegations as true, Plaintiff sufficiently alleges that Defendants prevented Plaintiff from filing proper grievances because they misled Plaintiff into believing that a grievance had already been filed and that the grievance process was unavailable to him. *See Mitchell*, 318 F.3d at 529 (finding administrative remedies process unavailable to inmate when prison staff refused to provide prisoner with necessary grievance forms); *Rye*, 689 F. Supp. 2d at 779-80 (finding factual issue whether administrative remedy process was available where a defendant led prisoner to believe that there was no way to appeal the denial of his grievance). Therefore, we cannot dismiss Plaintiff's claims for a failure to exhaust administrative remedies at this juncture.

### 2. *Sufficiency of Plaintiff's Claims Against Wetzel*

The next argument advanced by Defendants is that the § 1983 claim asserted against Wetzel must be dismissed because Plaintiff does not allege that Wetzel was personally involved in the alleged constitutional violations. Plaintiff did not respond to this argument.

Defendant accurately notes that "[a]n individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Plaintiff's Amended Complaint lacks any facts that would suggest that Wetzel was personally involved in the alleged wrongdoing. Specifically, Plaintiff does not allege that Wetzel participated at all in the decision to assign Plaintiff to a top bunk. *Williams v. Beard*, No.

10-539, 2011 WL 744534, at *2 (M.D. Pa. Feb. 23, 2011) (dismissing inmate's § 1983 claim against superintendent because complaint did not allege that superintendent was personally involved in assigning inmate to top bunk despite his nervous medical condition).  In fact, Wetzel did not even become the Director of the DOC until well after Plaintiff's constitutional rights were allegedly violated.  In the absence of facts that allege Wetzel's personal involvement in the alleged violation of Plaintiff's constitutional rights, we must dismiss Count I against Wetzel.

    *3.*   *Sufficiency of Plaintiff's Claims Against Lewis and Korszniak*

    Defendants also argue that Plaintiff's § 1983 claim fails because he does not adequately allege any violation of a constitutional right.  "The first step in evaluating a Section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).  Initially, we note that Plaintiff cannot bring a claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment because that Clause "does not apply until an inmate has been both convicted of and sentenced for his crimes."  *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)).  A pre-trial detainee must look to the Fourteenth Amendment's Due Process Clauses for protection.  *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000).  "Under the Fourteenth Amendment, a pretrial detainee is entitled at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment."  *Id.* (internal quotation marks omitted).  Therefore, the Eighth Amendment standards still establishes "a floor of sorts" as to what is permitted under the Fourteenth Amendment.  *Id.*

"[N]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Id.* An Eighth Amendment claim against a prison official must allege: (1) a deprivation that is sufficiently serious to fall within the Eighth Amendment's zone of protections; and (2) a culpable state of mind of the officials that shows they were motivated by a desire to inflict unnecessary and wanton pain. *Fuentes*, 206 F.3d at 345.

### (i)    Defendant Korszniak

Plaintiff asserts a § 1983 claim against Korszniak, claiming that he failed to provide Plaintiff with adequate medical care when he did not arrange for Plaintiff to have alternative sleeping facilities or safety ladders. When a plaintiff challenges conditions of confinement or the adequacy of medical care, there must be a showing that prison officials were "deliberately indifferent" to a prisoner's serious medical needs. *Id.*; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The claim must allege (1) "a serious medical need, and ([2]) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582. To establish a serious medical need, a plaintiff must first demonstrate that "a failure to treat [the condition] can be expected to lead to substantial and unnecessary suffering, injury, or death." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). In addition, a plaintiff must show that the condition "has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a

doctor's attention." *Id.*  Plaintiff sufficiently alleges a serious medical need because he asserts that he had just undergone serious leg surgery, and it was obvious to any person that he needed further attention from a doctor due to his inability to move his leg.  The issue then is whether Plaintiff alleges that Korszniak was deliberately indifferent to his serious medical need.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  It is a subjective standard, under which the defendant must actually have known or been aware of the excessive risk to inmate safety.  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).  In the medical context, an inadvertent failure to provide adequate medical care by negligently diagnosing or treating a medical condition will not meet the deliberate indifference standard.  *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  So too, "a disagreement with the doctors over the proper means of treating [a] condition" will fall short of deliberate indifference.  *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987).  "[T]he key question . . . is whether defendants have provided plaintiff with some type of treatment, regardless of whether it is what plaintiff desires." *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).  "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990.)

Here, Plaintiff alleges that Korszniak was deliberately indifferent to Plaintiff's medical needs because he did not order that Plaintiff be assigned to a lower bunk.  A number of district courts have found "that negligently failing to assign a prisoner to a bottom bunk does not meet the subjective prong for a deliberate indifference claim." *Liner v. Fischer*, No. 11-6711, 2013 WL 4405539, at *22 (S.D.N.Y. Aug. 7, 2013) (citing *Felix-Torres v. Graham*, 687 F. Supp. 2d

38, 52-53 (N.D.N.Y. 2009)); *see Goodson v. Willard Drug Treatment Campus,* 615 F. Supp. 2d 100, 101-02 (W.D.N.Y. 2009) (collecting cases).  We agree with that statement of the law. However, in this case, Plaintiff sets forth facts alleging more than mere negligence.  *See Liner,* 2013 WL 4405539, at *22 (refusing to assume at motion to dismiss stage that any failure to assign the plaintiff to a bottom bunk could only have been negligent where the plaintiff alleged facts that could plausibly support that the defendant acted with deliberate indifference).  Plaintiff here alleges that Korszniak was aware that Plaintiff had recently had leg surgery that left him with a limited ability to use his left leg.  Furthermore, Plaintiff claims that it was obvious that his limited use of his leg left him unable to safely get in and out of a top bunk.  *See Beers-Capitol*, 256 F.3d at 133 (noting an excessive risk can be "so obvious that the official must have known of the risk").  Despite his obvious limitations, Korszniak did not order that Plaintiff be assigned to a lower bunk.  Plaintiff had difficulty getting in and out of his assigned top bunk because of his leg condition, and he ultimately sustained severe injury when he lost his balance trying to descend from the top bunk.  We are satisfied that Plaintiff alleges facts that if proved could plausibly support a finding that Korszniak was deliberately indifferent to Plaintiff's serious medical need.  Plaintiff asserts that it was obvious that he was unable to safely get in and out of a top bunk and that Korszniak was aware of this obvious risk but disregarded it by refusing to assign Plaintiff to a lower bunk.  *See Bermudez v. City of Phila.*, No. 06-4701, 2007 WL 1816469, at *2 (E.D. Pa. June 21, 2007) (finding facts sufficiently alleged deliberate indifference where the plaintiff informed intake nurse of medical condition that weakened his leg bones but nurse refused to assign him a lower bunk to accommodate the medical condition).  Plaintiff's claim against Korszniak will not be dismissed at this juncture.[4]

---

[4] We will also reject Korszniak's request that Plaintiff's claims for punitive damages be

(ii)     <u>Defendant Sergeant Lewis</u>

Plaintiff similarly asserts a § 1983 claim for denial of adequate medical care against Sergeant Lewis for his failure to provide Plaintiff with alternative sleeping facilities or safety ladders.  Under normal circumstances, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).  Therefore, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official like [Lewis] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference."  *Id.*  Here, when Plaintiff was assigned to a top bunk, he was being treated by the medical prison staff, and the medical staff did not indicate that Plaintiff had any medical restrictions that required him to sleep on a low bunk.  Nevertheless, we cannot dismiss Plaintiff's claim against Lewis at this time because Plaintiff alleges that Lewis knew or should have known that Plaintiff was being mistreated by the prison medical staff.  Specifically, Plaintiff claims that it was obvious that he should have been assigned to a low bunk for medical reasons because it was readily apparent that his inability to fully use his left leg inhibited him from safely ascending or descending from the top bunk.  If Plaintiff is able to prove that his medical condition was so obvious that any individual would recognize that he was incapable of safely using a top bunk, Lewis's inaction could constitute deliberate indifference.  Accordingly, we cannot dismiss this claim against Lewis at this time.

---

dismissed at this time.  (Korszniak's Mot. 14-15.)  Korszniak's argument is rooted in the notion that Plaintiff does not pled any facts supporting that any Defendants acted with deliberate indifference.  Because we have found that the facts in the Amended Complaint could possibly establish that Korszniak acted with deliberate indifference, his argument must fail.

C.     **Count II**

In Count II, Plaintiff brings a § 1983 claim against the DOC claiming that the DOC failed to train, supervise, or regulate its staff.  A municipality can be held liable under § 1983 only when the municipality itself causes a constitutional violation.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978).  It cannot be subject to respondeat superior or vicarious liability.  *Id.* To successfully hold a municipality liable under § 1983, a plaintiff must show "(1) a deprivation of a federal right; (2) a relevant policy or custom attributable to the municipality; and (3) a direct causal link between the municipal action and the deprivation of the federal right."  *Peters v. Cmty. Educ. Centers., Inc.*, No. 11-850, 2014 WL 981557, at *3 (E.D. Pa. Mar. 13, 2014) (internal citations and quotations omitted).  Under a "failure-to-train" theory, an unconstitutional custom may be inferred where a municipality so failed to train its employees as to display deliberate indifference to the constitutional rights of those within its custody.  *Id.*  Under Plaintiff's failure-to-train theory, he must allege that (1) the DOC failed to adequately train prison officials about providing safe and appropriate medical accommodations for inmates; (2) the DOC was deliberately indifferent to the need for training; and (3) the lack of training had a direct causal link to Plaintiff's alleged Eighth Amendment injury.  *See id.* (citing *Connick v. Thompson*, -- U.S. --, 131 S. Ct. 1350, 1358 (2011)).

Plaintiff's claim fails because he does not sufficiently alleged that the DOC was deliberately indifferent to the need for training.  "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."  *Id.* at 1360.  Therefore, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate

13

deliberate indifference for purposes of failure to train." *Id.*  Here, Plaintiff fails to allege any pattern of similar constitutional violations that could support the DOC being deliberately indifferent to a need to train prison officials on providing safe and appropriate medical accommodations for inmates.  In fact, Plaintiff does not identify a specific training program that was lacking or facts that support an allegation that the DOC was aware its training was deficient. Without any allegation that the DOC was on notice that its training program was deficient, Plaintiff's claim will survive only if it falls into the "narrow range of circumstances" that would justify deliberate indifference based on a single incident.  Such circumstances exist if Plaintiff alleges that the violation of his Eighth Amendment rights was the "highly predictable consequence" of the DOC's inadequate training program.  *Connick*, 131 S. Ct. at 1361.  Plaintiff does not sufficiently make that allegation.  Plaintiff does not allege that the prison officials he interacted with were wholly untrained, and we cannot reasonably infer from the limited facts in the Amended Complaint that unidentified deficiencies in some unidentified training program were clearly going to lead to prison officials violating the constitutional rights of inmates.  *See Bennett v. Washington*, No. 11-176, 2013 WL 3716520, at *6 (E.D. Pa. July 15, 2013) (dismissing claim against prison supervisor for failure to train prison physicians to provide adequate medical care where there were no allegations of a pattern of similar violations and no facts that supported an inference that the alleged deficiencies in the training program were obviously going to lead to a constitutional violation).  Plaintiff fails to allege a claim against the DOC for failure to train under § 1983.

### D.     Count III

Next, Plaintiff brings a claim against Defendants under the ADA.  Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Title II authorizes private suits for money damages and injunctive relief against public entities that violate the provisions of Title II.  42 U.S.C. § 12133.  State prisons fall within the ADA's definition of a public entity.  *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 209-10 (1998).  However, Title II permits claims only against the public entity itself, not against individuals.  *See Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002).  Therefore, all the claims brought under the ADA against Wetzel, Lewis, and Korszniak in their individual capacities are improper and must be dismissed.

Plaintiff's ADA claims against the DOC and against Wetzel and Lewis in their official capacities will similarly be dismissed because Plaintiff does not state a claim under Title II of the ADA.[5]  Plaintiff alleges that the DOC failed to accommodate his alleged "disability" by denying his request for a low bunk or for a ladder and guardrail in violation of Title II of the ADA.  Even assuming that Plaintiff is a qualified individual with a disability, which Defendants dispute and which we decline to rule on at this juncture, Plaintiff's allegations still fall short of stating a claim under the ADA because Plaintiff does not allege that the DOC's failure to accommodate him precluded him from participating in a service, program, or activity.  *Owens v. Cicchi*, No.

_____

[5] Title II of the ADA validly abrogates sovereign immunity as to state conduct that actually violates the Constitution.  *United States v. Georgia*, 546 U.S. 151, 159 (2006).  But, as an initial matter, before a plaintiff may sue a state for damages under Title II, he or she must first state a valid claim under Title II of the ADA.  *Basem*ore *v. Vihlida*, No. 13-669, 2014 WL 640257, at *14 (W.D. Pa. Feb. 19, 2014) (citing *Bowers*, 475 F.3d at 553 n.32).

09-4503, 2014 WL 2615731, at *4 (D.N.J. June 12, 2014) (finding the plaintiff failed to show discrimination under Title II of the ADA when he claimed his requests for accommodation were denied but did not allege he was excluded from the benefits of any specific service, program, or activity as a result).  Nor does he allege that the DOC's failure to accommodate him prevented him from accessing any benefits because of his disability.  In essence, Plaintiff's ADA claim is nothing more than another allegation that he was denied medical treatment for his alleged disability, which alone does not support a claim under the ADA.  *Basemore*, 2014 WL 640257, at *14 ("[H]e does not state a claim under the ADA because his claim is based upon his disagreement with Dr. Jin's medical determination that he did not require a handicap cell."); *Thomas v. Pa. Dep't of Corr.*, 615 F. Supp. 2d 411, 427 (W.D. Pa. 2009) (finding that while denying a plaintiff a handicap cell may constitute denial of medical treatment, it did not constitute a violation of Title II of the ADA).  Plaintiff's ADA claims must be dismissed.

E.      **Counts IV & V**

In Counts IV & V, Plaintiff brings Pennsylvania state law claims against all Defendants for intentional infliction of emotional distress ("IIED") (Count IV) and negligent infliction of emotional distress ("NIED") (Count V).  The Commonwealth Defendants have moved to dismiss these counts arguing that they were acting within the scope of their employment and are shielded from liability based on the doctrine of sovereign immunity.  Korszniak has moved to dismiss these claims arguing that Plaintiff fails to sufficiently state a claim for either of the alleged torts.

1.      *Sovereign Immunity*

The Commonwealth of Pennsylvania, as well as its parties, officials, and agencies are protected from liability for negligent or intentional torts by the doctrine of sovereign immunity, unless the cause of action falls within a statutory exception or the individual's conduct falls

16

outside the scope of his or her employment.[6]  1 Pa. Con. Stat. Ann. § 2310; 42 Pa. Con. Stat.

Ann. § 8522; *Bolden v. Pa. Bureau of Prisons*, No. 11-0467, 2011 WL 4974489, at *4 (E.D. Pa.

Oct. 19, 2011); *Waters v. Tennis*, No. 04-2497, 2006 WL 2136248, at *3 (M.D. Pa. July 28,

2006).  An employee's acts are within the scope of his or her employment when they:  (1) are the

kind that the employee is employed to perform; (2) occur substantially within the job's

authorized time and space limits; (3) are motivated at least in part by a desire to serve the

employer; and (4) if force was used by the employee against another, the use of force is not

unexpectable by the employer.  Restatement (Second) Agency § 228; *Brumfield v. Sanders*, 232

F.3d 376, 380 (3d Cir. 2000) (stating that Pennsylvania has adopted the scope of employment

definition of the Restatement); *see also Wesley v. Hollis*, No. 03-3130, 2007 WL 1655483, at *14

(E.D. Pa. June 6, 2007).

Plaintiff alleges that the Commonwealth Defendants were all employed by the

Pennsylvania DOC when the acts at issue—denying Plaintiff a low bunk or other

accommodation—occurred.  As such, they are protected by sovereign immunity so long as their

acts were within the scope of their employment.  Plaintiff alleges that the actions at issue

occurred at the DOC when the Commonwealth Defendants were working for the DOC.

Furthermore, the actions were plainly the kind of actions that they were employed to perform as

the Director of the Department of Corrections and as a Corrections Officer.  Moreover, based on

the factual allegations, Plaintiff fails to plead any facts that could lead to the inference that the

Commonwealth Defendants' actions were not motivated, at least in part, by a desire to serve the

---

[6] The statutory exceptions to sovereign immunity are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways, and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. Con. Stat. Ann. § 8522(b).  None of these exceptions apply to the facts before us.

17

DOC.  Therefore, the Commonwealth Defendants' conduct was within the scope of their employment and they are protected by sovereign immunity.  Accordingly, the claims for IIED and NIED will be dismissed as to Wetzel and Lewis.

>               2.      *Claims against Korszniak*

>               (i)      <u>IIED</u>

"[T]he Supreme Court of Pennsylvania would recognize the tort of intentional infliction of emotional distress as described in Restatement (Second) of Torts § 46 (1965)."  *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 217 (3d Cir. 2001).  To establish a claim for IIED, a plaintiff must prove:  (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant's conduct caused a person severe emotional distress; and (3) that the defendant acted intending to cause that person such distress or with knowledge that such distress was substantially certain to occur.  *Id.*  "In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct."  *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (internal quotations omitted).  "Liability on an intentional infliction of emotional distress claim has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* at 231-32 (internal quotations omitted).

Plaintiff alleges that Korszniak did not order that Plaintiff be assigned to a low bunk for medical reasons or provide Plaintiff with other accommodations to enable him to safely get in and out of a top bunk.  Such an allegation could not support a finding that Korszniak acted in an "extreme and outrageous" manner.  Furthermore, we agree with Korszniak that Plaintiff fails to allege that he suffered any severe emotional distress from Korszniak's conduct.  Plaintiff does no

more than make a boiler-plate statement that he suffered "emotional and psychological trauma" without alleging that the trauma was serious or stating any fact to support that he experienced anything other than physical injuries.  (Am. Compl. ¶¶ 68, 27, 29, 32, 33, 35.)  Plaintiff's IIED claim against Korszniak will be dismissed.

(ii)   <u>NIED</u>

"[T]he cause of action for negligent infliction of emotional distress is restricted to four factual scenarios:  (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative.  *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008).  Korszniak argues that Plaintiff does not plead any facts that allege his claim fits into any of these four scenarios.  We disagree.

Scenario one specifically covers situations where "a special contractual or fiduciary relationship exists between the parties creating an implied duty on the part of the defendants to care for the plaintiffs' emotional well-being, and the plaintiffs suffered extreme emotional distress as a result of the defendants' breach of that duty."  *Madison v. Bethanna, Inc.*, No. 12-1330, 2012 WL 1867459, at *12 (E.D. Pa. May 23, 2012) (internal quotations omitted).  The Pennsylvania Supreme Court has noted that some doctor-patient relationships "involve an implied duty to care for the plaintiff's emotional well-being that, if breached, has the potential to cause emotional distress resulting in physical harm."  *Toney v. Chester Cnty. Hosp.*, 36 A.3d 83, 95 (Pa. 2011).  Here, Plaintiff alleges a doctor-patient relationship between Korszniak and himself such that Korszniak owed Plaintiff a duty of care.  Plaintiff further claims that Korszniak breached his duty of care to Plaintiff by not providing adequate medical treatment, and, as a

19

result, Plaintiff suffered physical injury and severe emotional distress.  At this juncture,

Plaintiff's allegations are sufficient to state a claim for NIED under scenario one.  *See Mulawka*

*v. Pennsylvania*, No. 11-1651, 2012 WL 6864596, at *13 (W.D. Pa. Nov. 28, 2012) (finding the

plaintiff sufficiently stated a claim for NIED where she "alleged that [the defendant] and its

employees provided medical treatment to her, albeit allegedly insufficient treatment, and she

alleges that she suffered injury from their actions").  Accordingly, this claim will not be

dismissed as to Korszniak.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss will be granted in part and

denied in part.  An appropriate order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

20